**E-Filed 1/13/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANH THE DUONG, et al.,<br><br>Defendants. | **Case No. CR-01-20154 JF**<br><br>**ORDER[1] GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS STATEMENTS** |

The Court has read and considered Defendant Duong's motion to suppress certain statements he made to law enforcement officers, as well as any evidence derived therefrom. The Court also has considered the oral argument presented by counsel at the hearing on December 16, 2009. For the reasons discussed below, the motion will be granted in part and denied in part.

## I. FACTS

The relevant facts are undisputed for the purposes of the instant motion and are set forth in Defendant's Notice of and Motion to Suppress Statements Obtained and Derivative Evidence

---

[1] This disposition is not appropriate for publication and may not be cited.

1  ("Motion") (Document #1064).

2  ## II. DISCUSSION

3      Defendant moves to suppress all statements he made to law enforcement officers

4  following his arrest and seeks an order precluding the use of those statements for any purpose at

5  trial.  The Government has stated that it does not intend to use any such statements between

6  Defendant's arrest on July 16, 2001 and his initial court appearance on July 23, 2001 in its case-

7  in-chief.  Accordingly, the motion is moot to that extent.  *See, e.g.*, *United States v. Camarillo*,

8  Crim. No. 06-329-HA, 2007 WL 2292691 at *5 (D. Or. Aug. 7, 2007) (finding motion to

9  suppress moot where government represented that it did not intend to use the challenged

10  evidence in its case-in-chief).  The Government does oppose suppression of statements

11  Defendant made during three telephone calls to Federal Bureau of Investigations ("FBI") Special

12  Agent Blake Wirth ("Agent Wirth") on October 23, 2002; November 5, 2002; and February 12,

13  2003.  In addition, the Government argues that all of Defendant's statements are admissible for

14  purposes of impeachment in the event Defendant testifies.

15  **A.     Admissibility of Defendant's Telephone Conversations with Wirth**

16      Defendant's three telephone conversations with Agent Wirth, all of which Defendant

17  initiated himself, occurred while Defendant was in custody and after he had been indicted.  As

18  both parties recognize, "[f]or the fruits of postindictment interrogations to be admissible in a

19  prosecution's case in chief, the State must prove a voluntary, knowing, and intelligent

20  relinquishment of the Sixth Amendment right to counsel." *Michigan v. Harvey*, 498 U.S. 344,

21  348-49 (1990).  The government can satisfy its burden of proving the defendant's waiver was

22  knowing and intelligent by showing that it was given "after receiving warnings equivalent to

23  those prescribed by *Miranda v. Arizona*[, 384 U.S. 346 (1966)]."

24      Even assuming that Defendant's statements otherwise were voluntary, the Court

25  concludes that the government has failed to show that Defendant knowingly and intelligently

26  waived his right to counsel.  Agent Wirth did not advise Defendant of his *Miranda* rights during

27  any of the post-indictment telephone conversations.  The Government relies entirely upon Agent

28  2

1  Wirth's original *Miranda* advisement, which was given more fifteen months before the first

2  telephone conversation at issue.

3       The government cites *Coughlan v. United States* and *Reinke v. United States* in support of

4  its position.  In *Coughlan*, the Ninth Circuit upheld the trial court's admission of a confession

5  obtained in a jail interview room where "the record ma[de] it abundantly clear that the accused

6  was fully and fairly advised of and understood his constitutional rights, including the right to

7  have his appointed attorney present, and with that understanding he waived those rights and

8  voluntarily gave the incriminating statements to police officers."  391 F.2d 371, 371-72 (9th Cir.

9  1968) (per curiam), *cert. denied*, 393 U.S. 870 (1968).  Similarly, in *Reinke*, the Ninth Circuit

10 upheld the admission of a confession given by a defendant while in custody where, after being

11 contacted by the defendant, the agent who took the confession "informed the appellant of his

12 rights to remain silent and to have counsel present, and had him sign a Waiver of Rights form."

13 405 F.2d 228, 229 (9th Cir. 1968).

14      The facts of this case are readily distinguishable.  Most obviously, Defendant was not re-

15 *Mirandized*.  Also of note is that one of the apparent purposes of Defendant's calls to Agent

16 Wirth was to ask the agent to communicate with Defendant's counsel.  Nonetheless, the

17 Government argues that Defendant "did not require the same admonishment because of his

18 strong understanding of his rights."  (Govt. Resp. 4 n.1.)  The Government contends that this

19 "strong understanding" was evidenced by Defendant's apparent intent to confess to Agent Wirth

20 in order to defer his state proceedings pending his trial in the instant case.  The Government

21 claims that "[t]here is no showing on the record, nor did Duong contend, that he did not

22 comprehend his *Miranda* rights."  (*Id.*)

23      It is not Defendant's burden to show that he did not comprehend his rights; it is the

24 government's burden to show that he did and that he waived them knowingly and intelligently.  It

25 is undisputed that Defendant was properly *Mirandized* several times in the days immediately

26 following his arrest in July 2001.  Even though he invoked his right to counsel several times, he

27 was subjected to a series of interrogations before his first court appearance seven days later.

28                                          3

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS
STATEMENTS
Case No. CR-01-20154 JF
(JFLC3)

1   Fifteen months elapsed before Defendant made the first of his three collect telephone calls to

2   Agent Wirth.  The Government does not contend that Agent Wirth made any effort to remind

3   Defendant of his *Miranda* rights during any of the three conversations.

4        Because the Government has failed to meet its burden of showing that Defendant

5   knowingly and intelligently waived his right to counsel in connection with his telephone

6   conversations with Agent Wirth, the Government will be precluded from offering any statements

7   Defendant made during those conversations in its case-in-chief.[2]

8   **B.    Admissibility of Defendant's Statements for Impeachment Purposes**

9        Even though the Government will not introduce any of the statements at issue as part of

10  its case-in-chief, either by agreement or as a result of this order, it may still use the statements to

11  impeach Defendant's testimony as long as they were voluntarily given under due process

12  standards.  *Mincey v. Arizona*, 437 U.S. 385, 398 (holding that statements are inadmissible for

13  impeachment where they were not "the product of a rational intellect and free will" (emphasis

14  and citations omitted)); *see also Dickerson v. United States*, 530 U.S. 428, 434 (2000) (holding

15  that the due process test is "an inquiry that examines 'whether a defendant's will was overborne'

16  by the circumstances surrounding the giving of a confession" (citing  *Schneckloth v. Bustamonte*,

17  412 U.S. 218, 226 (1973)).  Defendant contends that none of his statements to law enforcement

18  meets this standard.

19       "Determination of whether a statement is involuntary . . . requires careful evaluation of all

20  the circumstances of the interrogation."  *Id.* at 401.  In *Mincey*, for example, the court found that

21  the defendant's statements, which were obtained as he lay in a hospital bed recovering from a

22  gunshot wound he had received just hours earlier, were involuntary where he "was weakened by

23  pain and shock, isolated from family, friends, and legal counsel, and barely conscious, and his

24  will was simply overborne."  *Id.* at 401-02.  In contrast, in *United States v. Martin*, after

25  ─────────────

26       [2]Because it finds that statements obtained through Defendant's telephone conversations
    with Agent Wirth are inadmissible, the Court does not reach the issue of whether the statements
27  were taken in violation of applicable ethical standards.

28                                   4

considering all of the circumstances surrounding the interrogation of the defendant, the Ninth Circuit held that "[t]he district court properly concluded that 'although the defendant was injured and under medical care at the time the statements were made, the type, dosage, and schedule of painkilling narcotic administered to [Martin] was not sufficient to overbear his will to resist the questioning or impair his rational faculties.'" 781 F.2d 671, 674 (1985).

The present case is closer to *Martin* than to *Mincey*,. Defendant has not shown that his "will was overborne" during any of his conversations with law enforcement officers.  While Defendant was questioned in custody by numerous officers over nearly a week before his arraignment, including several periods of questioning after he indicated his desire to see a lawyer, Defendant does not claim that any individual interrogation session was unreasonably long or that he was physically harmed or deprived of food, water, or sleep.  At most, he argues somewhat conclusorily that the officers' repeated "badgering"rendered his statements involuntary.  This showing is insufficient to establish a due process violation.  This observation is particularly true with respect to Defendant's statements to Agent Wirth during the three telephone conversations Defendant himself initiated.

### III. CONCLUSION

Good cause therefor appearing, the motion is granted in part and denied in part as set forth above.

IT IS SO ORDERED.

DATED: January 13, 2010

_____
JEREMY FOGEL
United States District Judge

5