\*\*E-Filed 1/14/10\*\*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANH THE DUONG, et al.,<br><br>　　　　Defendants. | Case No. CR-01-20154 JF<br><br>ORDER[1] DENYING MOTION TO STRIKE AGGRAVATING FACTORS ALLEGED UNDER 18 U.S.C. § 3592(c)(2) |

The Court has read and considered Defendant Duong's motion to strike the statutory aggravating factors alleged under 18 U.S.C. § 3592(c)(2) for prior felony convictions involving the use of a firearm against another person. The Court also has considered the oral argument presented by counsel at the hearing on December 16, 2009. For the reasons discussed below, the motion will be denied.

**I. DISCUSSION**

The Federal Death Penalty Act ("FDPA") requires that the jury find that at least one statutory aggravating factor is present before considering the death penalty. 18 U.S.C. § 3592(c).

---

[1] This disposition is not appropriate for publication and may not be cited.

Section 3592(c) lists fifteen separate categories of statutory aggravating factors for homicide. Section 3592(c)(2), which is at issue here, provides that:

> (2) Previous conviction of violent felony involving firearm. For any offense, other than an offense for which a sentence of death is sought on the basis of section 924(c), the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person.

18 U.S.C. § 3592(c)(2). Section 921 defines the term "firearm" as: "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C. § 921.

In 2003, Defendant was convicted in California state court of three counts of first degree murder and one count of second degree murder ("the International Club homicides"). In finding Defendant guilty on each of the four counts, the jury also found that Defendant had "personally and intentionally discharged a firearm, a handgun." (Def.'s Mot. Ex. C.) The relevant California statute defines the term "firearm" as "any device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of any explosion or other form of combustion." Cal. Penal Code § 12001(b).

Defendant contends that the Court should strike the International Club homicides as a statutory aggravating factor under Section 3592(c)(2) because California's definition of firearm is narrower than the federal definition in that the latter excludes antique firearms. Defendant's argument would require the Court to apply the "categorical" or "modified categorical" approach adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990). In order to grant Defendant's motion, the Court first must determine that the categorical approach is applicable to the Section 3592(c)(2). If it is, the Court then must apply that approach to determine whether the International Club homicides are valid statutory aggravating factors.

//

### 1.    Applicability of the Categorical Approach

As Defendant recognizes, the categorical approach was adopted in the context of non-capital sentencing under the Armed Career Criminal Act of 1984 ("ACCA") and the Career Criminals Amendment Act of 1986.  Defendant argues that the Court should look to other, non-capital contexts to which the categorical approach has been extended and apply the Supreme Court's reasoning from *Taylor* to the FDPA.  Defendant relies on *United States v. Smith*, 630 F. Supp. 2d 713 (E.D. La. 2007), an out-of-circuit district court case in which the court applied the categorical approach to Section 3592(c)(2) and struck the proffered statutory aggravating factor.

Neither the Supreme Court nor the Ninth Circuit has addressed the issue of whether *Taylor* applies to the FDPA.  However, the two circuits–and the only district court in the Ninth Circuit–to have faced the issue have rejected arguments identical or very similar to those Defendant makes here.  In the first relevant circuit opinion, the Fourth Circuit in *United States v. Higgs* rejected explicitly a defendant's attempt to extend *Taylor*'s reasoning to Section 3592(c)(2).  The issue in that case was not what type of firearm was used but whether a firearm had been used at all in the underlying crime.  The Fourth Circuit declined to accept the defendant's argument that the district court should have applied *Taylor*'s categorical approach to prevent the use of a statement the defendant made during the plea colloquy to show that he had used a firearm in the commission of the underlying crime:

> Because the language [of § 3592(c)(2)] quite plainly requires only that the previous conviction "involv[e] the use or attempted or threatened use of a firearm," it authorizes and likely requires the court to look past the elements of the offense to the offense conduct. *See United States v. Chong*, 98 F.Supp.2d 1110, 1120 (D.Haw.1999).  Additionally, whereas the court in *Taylor* noted that the categorical approach was proper to avoid "the practical difficulties and potential unfairness of a factual approach," *Taylor*, 495 U.S. at 601, the Court has made it clear that an individualized determination is required in the death penalty context, *Zant* [*v. Stephens*], 462 U.S. [862,] [] 877-79.

354 F.3d 281, 316-17 (2003), *cert. denied* 543 U.S. 999 (2004).

Defendant contends that the Fourth Circuit's reliance on the "involve" language is misplaced because that language does not distinguish § 3592(c)(2) from the statutes at issue in *Taylor* and its progeny, including the subsequent decision of the Supreme Court, *James v. United*

3

*States*, 550 U.S. 192 (2007).  However, Defendant does not argue that the Fourth Circuit's second line of reasoning that the death penalty context requires a different, individualized determination than the sentencing determination considered in *Taylor* also was flawed.

In addition to reaching the same result as the Fourth Circuit in *Higgs*, the Eighth Circuit recently explained the differences between the capital and non-capital contexts with regard to the application of *Taylor*.  *United States v. Rodriguez*, 581 F.3d 775 (8th Cir. 2009).  The *Rodriguez* court discussed two basic differences between the ACCA and FDPA that render *Taylor* inapposite in capital cases.  The first has to do with the effect of establishing that the defendant committed the underlying act:

> First, unlike sentence enhancements under the ACCA, a sentence of death does not automatically result if the defendant has qualifying predicate offenses under § 3592(c)(4).  Rather, if the jury finds at least one § 3592(c) factor, it may–but does not automatically–impose the death penalty after weighing aggravating factors against mitigating factors. . . .  Becoming eligible for a sentence, as opposed to automatically receiving one–an important structural difference between § 3592(c)(4) and the ACCA–counsels against applying *Taylor* analysis to the screening function of § 3592(c)(4).

*Rodriguez*, 581 F.3d at 806.  The second difference lies in the role of factual inquiry in capital sentencing as opposed to non-capital sentencing under the ACCA:

> [U]nlike the ACCA, the FDPA mandates a fact-intensive process in death-eligible proceedings.  In advance of trial, the government must set forth the aggravating factor or factors that it "proposes to prove as justifying a sentence of death."  18 U.S.C. § 3593(a)(2).
>
> > The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.
>
> *Id.* § 3593(a).  When a defendant is found guilty of a death-eligible offense, no Pre-Sentence Report is prepared.  *Id.* § 3593(c).  Instead, during the penalty phase, "information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592."  *Id.*
>
> . . .
>
> Factual inquiry is not permitted under the ACCA.  *See Taylor*, 495 U.S. at 601

(noting that, under the ACCA, "the practical difficulties and potential unfairness of a factual approach are daunting"). Factual inquiry is required in death penalty sentencing. *Zant*, 462 U.S. at 878-79. *Taylor* prohibits relying on witness testimony in ACCA cases; the FDPA expressly permits witnesses to testify. In *Taylor* cases, Pre-Sentence Reports are prepared, allowing advance opportunity to dispute prior convictions. PSRs are not prepared in death penalty cases. 18 U.S.C. § 3593(c).

*Rodriguez*, 581 F.3d at 806-07.

This Court agrees with the Eighth Circuit's analysis in *Rodriguez*, which "comports with" the Fourth Circuit's in *Higgs*. *Id.* at 807 n.13. Accordingly, the government will have the opportunity to present its evidence of the International Club homicides relating to § 3593(c)(2) to the jury.

## II. CONCLUSION

Good cause therefor appearing, Defendant's motion to strike is denied.

IT IS SO ORDERED.

DATED: January 14, 2010

_____
JEREMY FOGEL
United States District Judge